ANDREE T. HOCHHEISER, ADMINISTRATOR OF THE ESTATES OF CLAUDINE HOCHHEISER AND RENEE HOCHHEISER, DECEASED v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

No. 8610IC152

(Filed 16 September 1986)

State § 5; Highways § 9.2— death of motorists—no guardrail at scene of accident— no recovery under Tort Claims Act

In an action for death benefits pursuant to the N. C. Tort Claims Act, N.C.G.S. § 143-291, where the evidence tended to show that plaintiff's two daughters were killed in an automobile accident which occurred when the vehicle hit a patch of ice on a stretch of secondary road unprotected by a guardrail and then fell down an embankment, defendant's intentional, discretionary decision not to erect a guardrail at the site was not so clearly unreasonable as to amount to oppressive and manifest abuse so as to invoke the jurisdiction of the judiciary or the Industrial Commission to review the discretionary policy-

making decisions of defendant; defendant's intentional, discretionary decision was not a breach of any duty imposed upon it by the facts and circumstances of this case; and the evidence and findings of fact failed to support the conclusion that defendant was negligent in any respect in this case within the meaning of the Tort Claims Act or that any act or omission on the part of defendant was the proximate cause of the accident and deaths of plaintiff's children.

APPEAL by defendant from an opinion and award of the North Carolina Industrial Commission. Order entered 4 October 1985. Heard in the Court of Appeals 25 August 1986.

These claims arose out of an accident which occurred on 5 February 1980 on Newton Road in Wake County. Plaintiff filed claims for death benefits pursuant to the North Carolina Tort Claims Act, G.S. 143-291. The claims first came on for hearing before Deputy Commissioner Brenda B. Becton. The evidence presented at the hearing revealed the following uncontroverted facts. At approximately 8:00 a.m. on 5 February 1980 Renee and Claudine Hochheiser, ages 17 and 15, were driving along Newton Road en route to Ravenscroft School where they were students. The vehicle in which they were traveling hit a patch of ice, began to skid and fell down an embankment. Both Renee and Claudine Hochheiser died as a result of the accident.

Deputy Commissioner Becton made detailed findings of fact briefly summarized as follows: Renee and Claudine Hochheiser were killed when the car in which they were traveling hit a patch of ice, began to skid, and overturned down an embankment on the side of Newton Road. At the time of the accident Newton Road was a paved secondary road 21 feet wide with a 6-foot shoulder. Beside the shoulder at the point of the accident there was a 20- to 25-foot embankment, with a two-to-one vertical slope, extending along the shoulder approximately 42 feet. The embankment was hidden by vegetation. At the bottom of the embankment was a stream of water flowing from a culvert. The accident occurred at the bottom of a slight downhill decline in Newton Road. At the point of the accident there was no guardrail protecting travelers from falling down the embankment. The Department of Transportation had a duty, which it did not fulfill in this case, to inspect locations such as Newton Road for the existence of hazardous conditions like the one in this case. A reasonably prudent engineer would have inspected the accident site, identified it as particularly hazardous and installed a guardrail. The presence of a guard-

rail along this portion of Newton Road would have prevented the deaths of the plaintiff's children. There is no evidence tending to show any negligence on the parts of Renee or Claudine Hochheiser. Other findings necessary to an understanding of the case are set out in the opinion.

Based upon these findings of fact Deputy Commissioner Becton concluded that the deaths of Renee and Claudine Hochheiser were proximately caused by defendant's negligence in failing to "exercise the care which a reasonably prudent person would exercise in the discharge of their duties to make the area in and around the site of the accident reasonably safe for its intended use." She then entered an opinion and order awarding to plaintiff $100,000 each for the deaths of her daughters, the maximum award allowable under G.S. 143-291. A majority of the Industrial Commission entered an order adopting "as its own the Decision and Order filed by Deputy Commissioner Brenda B. Becton . . . ." Commissioner Stephenson dissented and filed an opinion. Defendant appealed.

*Marc W. Sokol and Marshall and Solomon, by Donald H. Solomon, for plaintiff appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General George W. Lennon, for the State.*

HEDRICK, Chief Judge.

The critical facts giving rise to these claims are not in dispute. The one question raised by this appeal is whether the uncontroverted facts support the award of death benefits to plaintiff under G.S. 143-291, the North Carolina Tort Claims Act. Stated another way, the question before us is whether these claims "arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." G.S. 143-291.

At common law the State was not liable for negligence or torts committed by the State or its agents in carrying out governmental duties and functions. *Moody v. State Prison*, 128 N.C. 12,

38 S.E. 131 (1901). It is well-established that the State cannot be sued in its own courts unless and until it expressly consents to be sued. *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 118 S.E. 2d 792 (1961). By enacting G.S. 143-291, the Tort Claims Act, the legislature waived the State's sovereign immunity for claims arising "as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." G.S. 143-291.

In the present case plaintiff claims, and the Commission seems to conclude, that the Department of Transportation, an agency of the State, was negligent because of its failure to construct a guardrail along the existing secondary road at the point where this accident occurred, resulting in the deaths of Renee and Claudine Hochheiser. The specific question, therefore, before us is whether the State of North Carolina can be held liable under the Tort Claims Act for its decision, acting through the Department of Transportation and its employees, not to construct a guardrail on its right-of-way adjacent to Newton Road at the point where the Hochheiser vehicle ran off the highway and overturned down the embankment.

Before we can say that defendant was negligent with respect to its failure to erect the guardrail in question, it must be determined that the Department of Transportation had a duty to the traveling public to erect such a guardrail. In an effort to show that defendant had a duty in this regard the Commission made numerous findings of fact regarding defendant's duty to inspect this particular highway:

. . . .

7. During the period from 1967 to the time of the accident, standards and guidelines had been established by the American Association of State Highway and Transportation Officials and the Federal Government, and a body of research had been developed which established a methodology for dealing with roadside hazards. These standards and guidelines, research, studies, and literature, all of which pointed strongly toward a duty to identify and remedy roadside

hazards, were available to and used by the North Carolina Department of Transportation personnel prior to the date of the accident.

8. The Board of Transportation and the Department of Transportation have delegated to the division and district engineers the responsibility of inspecting the roads, and locating and remediating potentially hazardous sites with an eye toward safety and improvement as required by Federal statute and by professionally recognized standards.

9. The Division of Highways has an obligation to conduct periodic reviews on secondary roads. The Department of Transportation established a Safety Program prior to 1980, but this program was designed to identify sites where accidents frequently occur. It did not identify hazardous sites.

. . . .

11. It is the responsibility of the district engineer to determine whether dangerous conditions or obstacles have arisen on existing roads.

12. The county maintenance supervisor, a position under the supervision of a district engineer, is responsible for conducting periodic reviews of a road for the existence of hazards that might develop.

. . . .

15. From 1967 to 1983, the Division of the Department of Transportation that included Wake County had no established procedures for periodic review of secondary roads to determine whether guardrails or other safety devices should be installed on existing roads.

. . . .

17. Stewart Sykes has been a District Engineer for Wake County since June of 1977. From 1974 to 1977, [h]e held the position of Assistant District Engineer for Wake County. As District Engineer, Mr. Sykes' duties include recommending guardrail installations on existing roads and he, along with several others, have a duty to look for dangerous locations on roadways. There was no system, however, for periodic re-

view of a need for safety devices, such as barriers or guard-rails, on secondary roads.

18. During the period from at least 1967 until the time of the accident, none of the employees of the North Carolina Department of Transportation having the authority and duty to inspect the roadways and make decisions regarding identification and remediation of roadside hazards, conducted any inspection of Newton Road with an eye to identification and remediation of any existing roadside hazards.

19. A reasonably prudent engineer exercising reasonable care would have identified the location as hazardous and would have made the location safe by the installation of a barrier.

These statements by the Commission, denominated findings of fact, insofar as they purport to delineate defendant's duty to the traveling public, are really no more than erroneous conclusions of law. We note that the highway in this case was an "existing secondary road" not originally built by defendant which came under defendant's control no later than 1967. This is not a situation in which defendant failed properly to maintain and repair an existing highway under its control. Newton Road, as originally designed and constructed, did not include a guardrail at the accident site. Defendant had actual or constructive knowledge of the absence of a guardrail through one or more of its employees. We can assume that defendant made a conscious, informed choice not to put a guardrail at this particular location and that its decision not to erect a guardrail was not a negligent omission. Thus, the Commission's findings or conclusions regarding defendant's duty to inspect are irrelevant and immaterial.

The Department of Transportation has the authority, duty and responsibility to plan, design, locate, construct and maintain the system of public highways in this State. G.S. 143B-346; *Equipment Co. v. Hertz Corp. and Contractors, Inc. v. Hertz Corp.*, 256 N.C. 277, 123 S.E. 2d 802 (1962). The Department is vested with broad discretion in carrying out its duties and responsibilities with respect to the design and construction of our public highways. *See Guyton v. Board of Transportation,* 30 N.C. App. 87, 226 S.E. 2d 175 (1976). The policies of the Board of Transportation and the Department of Transportation and the myriad discretionary decisions made by them as to design and construction are

not reviewable by the judiciary "unless [their] action is so clearly unreasonable as to amount to oppressive and manifest abuse." *Id.* at 90, 226 S.E. 2d at 177.

We hold that the Department of Transportation's intentional, discretionary decision not to erect a guardrail at the site of this accident was not "so clearly unreasonable as to amount to oppressive and manifest abuse" so as to invoke the jurisdiction of the judiciary or the Industrial Commission to review the discretionary policy-making decisions of the Department of Transportation. We further hold that defendant's intentional, discretionary decision was not a breach of any duty imposed upon it by the facts and circumstances of this case. We hold that the evidence and the findings of fact fail to support the conclusion that defendant was negligent in any respect in these cases within the meaning of the Tort Claims Act, G.S. 143-291, or that any act or omission upon the part of defendant was the proximate cause of the accident and the deaths of Renee and Claudine Hochheiser.

Reversed.

Judges ARNOLD and WELLS concur.