JUSTIN PHILLIPS, BY AND THROUGH GUARDIAN AD LITEM, TERESA BATES, PLAINTIFF V.
NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, DEFENDANT

No. COA09-100

(Filed 3 November 2009)

**1. Tort Claims Act— drop to shoulder of highway—findings**

In a Tort Claims action involving an automobile accident, there was competent evidence in the record to support the Industrial Commission's findings concerning a drop of four-and-one-half to six inches between a roadway and the shoulder.

**2. Highways and Streets— drop to shoulder of highway—no notice to Department of Transportation—no negligence**

Given the unchallenged evidence, it could not be said that the Industrial Commission erred by determining that the Department of Transportation (DOT) lacked actual or constructive notice of a drop of several inches between the highway and the shoulder in a Tort Claims case arising from an automobile accident. Those findings supported the conclusion that DOT did not negligently breach its duty.

**3. Appeal and Error— preservation of issues—no supporting findings or conclusion—argument abandoned**

An argument was abandoned where plaintiff argued that the Industrial Commission erred by finding that plaintiff did not meet

his burden of proof, but did not point to a finding or conclusion supporting that contention.

**4. Highways and Streets— Department of Transportation's duty to general public—maintenance—reasonable care**

The Industrial Commission did not err in a Tort Claims case by finding that DOT's duty to the general public includes reasonable care in maintaining highways, which is consistent with N.C.G.S. § 143B-346.

Appeal by plaintiff from Decision and Order entered 6 August 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 31 August 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Tina L. Hlabse, for the State.*

*Law Offices of Jonathan S. Dills, P.A., by Jonathan S. Dills for plaintiff-appellant.*

BRYANT, Judge.

Plaintiff appeals from a Decision and Order of the Full Commission of the North Carolina Industrial Commission filed 6 August 2008 which denied plaintiff's claim for benefits under the North Carolina Tort Claims Act. For the reasons stated herein, we affirm the Decision and Order of the Commission.

*Facts*

On 11 July 1999, Richard Phillips was driving on Highway 158 in Forsyth County, North Carolina. Justin Phillips (plaintiff), Richard's 14-year-old son, was seated in the rear seat. While traveling on Highway 158, the vehicle ran off the right side of the road onto the shoulder. In an attempt to regain control, Richard turned the vehicle into on-coming traffic and then again off the roadway. The vehicle ultimately hit a tree, and plaintiff sustained serious injuries to his head and shoulder. Defendant, North Carolina Department of Transportation (DOT), stipulated that plaintiff's damages exceeded $500,000.00.

At a hearing conducted before Deputy Commissioner George T. Glenn II, plaintiff's father testified that the cause of the accident was "a tremendous dropoff [sic]" between the pavement and the shoulder of the road which caused him to lose control of the vehicle. Evidence

indicated the drop-off where the Phillips' vehicle left the road was between four-and-a-half to six inches.

DOT division engineer Steven Ivey testified that he was the administrator responsible for maintenance and construction of all state-maintained highways in a five-county area, including Forsyth County and the subject section of Highway 158. Ivey introduced DOT's maintenance management manual, which is a compilation of state wide guidelines and regulations. Ivey described the manual as a field operations guide for maintenance operations. Two conditions listed under the maintenance management manual section entitled "Conditions which warrant the scheduling of unpaved shoulder maintenance?" state "[w]hen the area adjacent to the pavement is approaching a three-inch dropoff [sic]" and "[w]hen a resurfacing project results in more than a one-inch dropoff [sic]."

Ivey further testified that though he managed the maintenance and construction of state roads, in Forsyth County, Forsyth County maintenance engineer, Gary Neal, would oversee the maintenance and inspection of state-maintained roads in Forsyth County. Neal testified that as the Forsyth County maintenance engineer it was his duty to oversee the maintenance of all state-maintained roads in Forsyth County, including Highway 158. Specifically, Neal acknowledged that his department would be responsible for maintaining Highway 158 if there was erosion or degradation or just a disparity in height between the roadway and the shoulder of the roadway. However, on the topic of inspection, Neal testified as follows:

Neal: As we—as me and some of my employees—we make observations if we ride down a road and, if we traveled that road and saw that low shoulder and we're supervisory personnel . . . saw that shoulder, I would say, 'This is something we need to come back and repair.' And what we would do—we would schedule it. But there's twelve hundred miles of road in Forsyth County. . . . We make observations. We depend a lot on citizens letting us know problems—drainage problems, shoulder problems, pavement problems, and that's how our maintenance work is set up.

Forsyth County has more than twelve hundred miles of roadway, and approximately fifty DOT employees. Neal testified that DOT received no complaints about the area's drop-off prior to the accident and he was unaware of any dips in the roadway where the accident

occurred. However, had he been made aware of the drop-off, the area would have been barricaded, posted, and repaired.

Neal testified that Highway 158 was resurfaced sometime in 1998 and shoulder maintenance was performed sometime in April 1999, 22 June 1999, and sometime in July 1999.

Thomas Martin, a witness to the accident, testified that Highway 158 had been resurfaced two weeks prior to the accident. He also testified that the shoulder was not graded thereafter to address the significant drop-off.

The Deputy Commissioner concluded that DOT "was negligent in failing to have an inspection schedule and failing to inspect US Highway 158 to determine whether its condition was safe for the traveling public and that that negligence was a proximate cause of the motor vehicle accident plaintiff was involved in . . . ." DOT was ordered to pay plaintiff $500,000.00. DOT appealed to the Full Commission (the Commission).

On 12 February 2008, after reviewing the Opinion and Award entered by the Deputy Commissioner and the briefs and arguments made to the Commission, the Commission entered a Decision and Order which reversed the Opinion and Award of the Deputy Commissioner and ordered that plaintiff's claim for benefits under the North Carolina Tort Claims Act be denied. Plaintiff appeals.

---

On appeal, plaintiff raises eight issues: whether the North Carolina Industrial Commission erred (I) in making certain findings of fact; (II) in premising its conclusions of law on said findings; (III) in finding that plaintiff failed to meet his burden of proving NCDOT's negligence, (IV) in failing to consider NCDOT's admitted notice of problems with erosion, (V) in ignoring the State's admissions regarding NCDOT's obligation to inspect, (VI) in its use of discretion, (VII) in applying previous case precedent, and (VIII) in concluding that no duty was owed to plaintiff and/or that the public duty doctrine applies.

*Standard of Review*

Under the Tort Claims Act, when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.

*Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 589, 551 S.E.2d 486, 490 (2001) (citation and internal quotations omitted).

## I

[1] Plaintiff questions whether the Commission erred in making findings of fact 6, 12, 14, and 15. Plaintiff argues there was no competent evidence to support a finding that the drop-off between the roadway and the shoulder of the road was less than six inches, as stated in findings of fact 6 and 12, and that in findings of fact 14 and 15 the Commission makes inaccurate conclusions of law. We disagree.

We consider each of the Commission's challenged findings of fact in turn. In finding of fact number 6, the Commission stated the following:

> 6. Mr. Martin had noticed that there was a drop off from the paved portion of the highway to the unpaved portion of the highway of four and one-half to five inches . . . .

Martin gave the following testimony before the Deputy Commissioner:

> Martin: Basically, as I stated earlier, [the roadway] had been recently topped. . . . There was—there was approximately—about this much difference between the top of the road and the ground, which, I'd say, is about four and half—five inches.

We hold there was competent evidence submitted on the record to support the Commission's finding of fact number 6.

Next, plaintiff challenges the Commission's finding of fact number 12.

> 12. Mr. Ivy [sic] and Mr. Neal agreed a drop off of four and one-half to six inches from the paved to the unpaved portion of any road creates a hazardous condition for the traveling public that needs immediate attention. Furthermore, in accordance with NCDOT guidelines, any time the unpaved portion of a roadway is 3 or more inches below the grade of the paved portion of the roadway, the drop off condition should be repaired quickly.

Neal gave the following testimony before the Deputy Commissioner:

Counsel: Would you agree that's a significant dropoff?

Neal:    Yes.

Counsel: More than half a foot?

Neal:     I wouldn't say it's more than half a foot, but it was significant.

. . .

Neal:     If we would have known about that, we would have—let's say somebody had called us the day before and say we had a significant dropoff there. We would have went out there and looked at that. We would have got barricades out there and put them up until we could have got it repaired—until we could have got—scheduled repair, which would have been done quickly.

Ivey submitted the following testimony:

Ivey:     [The DOT maintenance management manual] is a document that the field operations uses as a guide for maintenance operations across the state.

          . . .

          [I]t is a guide for our maintenance personnel in determining the type of maintenance and repairs that need to be done on state-maintained roads.

. . .

Counsel: And could you read the section . . . under . . . "Conditions which warrant the scheduling of unpaved shoulder maintenance?"

. . .

Ivey:     "When the area adjacent to the pavement is approaching a three-inch dropoff."

We hold that there was competent evidence in the record to support of the Commission's finding of fact number 12.

Defendant also argues that the Commission's findings of fact numbers 14 and 15 are inaccurate conclusions of law.

14. The standard of care applicable to this case is negligence. Defendant's duty to the general public is to plan, design, locate, construct and maintain the public highways in the State of North Carolina, with reasonable care. Defendant is not strictly liable for every person injured on the roads subject to its jurisdiction.

15. Several factors are relevant to defendant's performance of its duties including, but not limited to, funding limitations, staffing limitations and prioritizing and coordinating construction projects. The evidence reveals that defendant has 1200 miles of State maintained roads in Forsyth County and a staff of approximately 50 employees. Their numerous duties include drainage issues, pavement repair, shoulder maintenance, dead animal pick-up, snow and debris removal, inspection of driveway permits and encroachments, maintenance of guardrails, and a multitude of other repairs. By necessity, defendant relies on reports from the traveling public, observations by defendant's employees, or law enforcement reports in ascertaining where problems exist on the roadways. In light of defendant's limited resources and the number of duties, defendant's reliance on reports from the traveling public, observations by defendant's employees, or law enforcement reports in ascertaining where problems exist on the roadways, is reasonable.

Plaintiff filed a claim for damages against DOT under the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, *et seq.* DOT is subject to a suit to recover damages caused by its negligence only as is provided in the Tort Claims Act. *Drewry v. North Carolina Dep't of Transp.*, 168 N.C. App. 332, 336, 607 S.E.2d 342, 346 (2005) (citation omitted).

Under the Tort Claims Act . . ., negligence is determined by the same rules as those applicable to private parties. Plaintiff must show that (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury.

*Id.* at 337, 607 S.E.2d at 346 (citing N.C. Gen. Stat. § 143-291(a) (2003)) (external citation and internal quotations omitted). Therefore, we hold that the Commission's finding of fact number 14, "[t]he standard of care applicable to this case is negligence[,]" is merely a statement of the law applicable to the dispute between plaintiff and DOT and consistent with the North Carolina General Statutes and prior holdings of this Court.

Regarding finding of fact number 15, plaintiff does not dispute the Commission's findings that there are 1,200 miles of state-maintained roads in Forsyth County or that there were 50 Forsyth County

staff members responsible for maintaining those roads. Plaintiff argues that the Commission's conclusion that "defendant's reliance on reports from the traveling public, observations by defendant's employees, or law enforcement reports in ascertaining where problems exist on the roadways" was a necessity, was erroneous. We address this argument in the discussion under sections *II*, *IV*, *V*, *VI*, and *VII*.

Accordingly, we overrule the assignment of error that pertains to the Commission's finding of fact number 14 and consider the assignment of error that pertains to finding of fact number 15 in the discussion below.

## *II, IV, V, VI, & VII*

**[2]** Plaintiff argues that the Commission made an error of law by extrapolating *Hochhesier v. North Carolina Dep't of Transp.*, 82 N.C. App. 712, 348 S.E.2d 140 (1986), to mean that DOT does not have a mandatory duty to inspect state-maintained roadways.

The Commission stated the following conclusion:

3. The [DOT] is vested with broad discretion in carrying out its duties and responsibilities with respect to the design and construction of our public highways. The policies of the Board of Transportation and the Department of Transportation and the myriad discretionary decisions made by them as to design and construction are not reviewable by the judiciary "unless [their] action is so clearly unreasonable as to amount to oppressive and manifest abuse." *Hochhesier v. N.C. Dep't of Transp.*, 82 N.C. App. 712, 348 S.E.2d 140 (1986), *aff'd by* 321 N.C. 117, 361 S.E.2d 562 (1987) . . . .

We consider whether DOT's reliance on reports from the traveling public, observations of its employees, and law enforcement reports amounts to a breach of duty which would subject DOT to a claim for negligence.

In *Hochhesier*, the issue before this Court was whether DOT could be held liable under the North Carolina Tort Claims Act for failing to place a guardrail along a secondary road where the plaintiff's car ran off the road and down an embankment. *Id.* at 715, 348 S.E.2d at 141. This Court reasoned as follows:

The Department of Transportation has the authority, duty and responsibility to plan, design, locate, construct and maintain the

system of public highways in this State. The Department is vested with broad discretion in carrying out its duties and responsibilities with respect to the design and construction of our public highways.

*Id.* at 7178, 348 S.E.2d at 142-43 (internal citations omitted). However, the *Hochhesier* Court was not considering "a situation in which [DOT] failed properly to maintain and repair an existing highway under its control." *Id.* at 717, 348 S.E.2d at 142.

In *Phillips v. North Carolina Dep't of Transp.*, 80 N.C. App. 135, 341 S.E.2d 339 (1986), we considered whether the Industrial Commission properly denied recovery where the plaintiffs alleged injury as a proximate result of DOT's failure to maintain a highway under its control. We determined that the Tort Claims Act "extend[ed] the State's liability to include the negligent omissions and failures to act of its employees." *Id.* at 137, 341 S.E.2d at 341. The plaintiffs alleged that DOT failed to remove a hazard in close proximity to a right-of-way DOT had a duty to maintain; DOT had notice of the hazard; and DOT had substantial time to remove it—more than thirty years. *Id.* at 138, 341 S.E.2d at 341.

"The happening of an injury does not raise the presumption of negligence. There must be evidence of notice either actual or constructive." *Willis v. City of New Bern*, 137 N.C. App. 762, 765, 529 S.E.2d 691, 693 (2000) (citation omitted).

[N]otice may be either actual, which brings the knowledge of a fact directly home to the party, or constructive, which is defined as information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.

*State v. Poteat*, 163 N.C. App. 741, 746, 594 S.E.2d 253, 255-56 (2004) (external citation and internal quotations and brackets omitted).

Here, the Commission stated the following conclusion:

4. In the present case, defendant's reliance from the traveling public, observations by defendant's employees, and law enforcement reports in ascertaining where problems exist on the roadways and the determination of priority in which to repair them constitutes a discretionary decision and is not a negligent breach of its duty.

The issue is whether DOT had notice of the drop-off between the paved roadway and the unpaved shoulder along Highway 158. *See Willis*, 137 N.C. App. at 765, 529 S.E.2d at 692-93. The Commission made the following unchallenged findings of fact:

> 7. Mr. Martin . . . had [not] reported to the North Carolina Department of Transportation . . . the drop off between the paved portion of the roadway and the unpaved portion of the roadway prior to this accident.
>
> . . .
>
> 11. Mr. Neal stated that had the problem described by Mr. Martin . . . regarding the drop off from the paved portion to the unpaved portion of Highway 158 come to either his or any of his employees' attention, his office would have immediately inspected the problem and, if needed, would have placed warning signs and scheduled the needed repairs.

Absent evidence that DOT had actual notice of the drop-off between the paved roadway and the unpaved shoulder of Highway 158, we consider whether DOT had constructive notice. "Constructive knowledge of a dangerous condition can be established in two ways: the plaintiff can present direct evidence of the duration of the dangerous condition, or the plaintiff can present circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time." *Thompson v. Wal-Mart Stores, Inc.,* 138 N.C. App. 651, 654, 547 S.E.2d 48, 50 (2000) (citation omitted). Pertinent to this discussion and in support of the Commission's finding of fact number 11, Neal gave the following testimony before the Deputy Commissioner:

> Neal: I'm saying, every time a tractor and trailer pulls off the shoulder of the road, it doesn't—you may have the—you may fix the shoulder today. It may last six weeks. It may last six months. It may just last six days. It has a lot to do with how much moisture the shoulder gets on it, how many trucks pull off of it. There's a whole lot of particulars that cause this, so you could fix the shoulder this week and it may stay there for a long time. You may come back in— three days later because it rained, or whatever, and you have a problem there.

Given the unchallenged findings of fact, we cannot say that the Commission erred in determining that DOT lacked both actual or

constructive notice of the drop-off along Highway 158 between the roadway and the roadside shoulder. Therefore, we hold that the findings of fact support the Commission's conclusion that DOT did not negligently breach its duty. Accordingly, plaintiff's assignments of error are overruled.

### III

**[3]** Next, plaintiff argues that the Commission erred by finding that plaintiff failed to meet his burden of proving defendant's negligence. However, plaintiff directs our attention to no specific finding of fact or conclusion of law which would allow us to consider "(1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Fennell*, 145 N.C. App. at 589, 551 S.E.2d at 490 (citation omitted). Accordingly, we deem this argument abandoned.

### VIII

**[4]** Next, plaintiff argues that the Commission erred in findings of fact numbers 13 and 14 because such findings indicate that DOT owed no duty to plaintiff and/or that the public duty doctrine applies. We disagree.

The Commission made the following findings of fact:

13. Defendant has the authority, duty and responsibility to plan, design, locate, construct and maintain the existing public highways in the State of North Carolina. In so doing, defendant acts for the benefit of the general public.

14. The standard of care applicable to this case is negligence. Defendant's duty to the general public is to plan, design, locate, construct and maintain the public highways in the State of North Carolina, with reasonable care. Defendant is not strictly liable for every person injured on the roads subject to its jurisdiction.

The Commission states that "[DOT]'s duty to the general public is to plan, design, locate, construct and maintain the public highways in the State of North Carolina, with reasonable care." This is consistent with North Carolina General Statutes, section 143B-346.[1] Moreover,

---

1. Under North Carolina General Statutes, section 143B-346, "[t]he general purpose of the Department of Transportation is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation sys-

the Commission does not otherwise discuss the public duty doctrine in its findings of fact or conclusions. Accordingly, we overrule these assignments of error.

Affirmed.

Chief Judge MARTIN and Judge HUNTER, Robert C. concur.

---

tem for the economical and safe transportation of people and goods as provided for by law." N.C. Gen. Stat. § 143B-346 (2007).