An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-494

Filed 17 December 2025

North Carolina Industrial Commission I.C. File No. TA-29226

ANGELA LASSITER, Administrator of THE ESTATE OF STACY BENNETT and THE ESTATE OF DA'MARION CROWELL, and JABARRI THOMAS, Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant.

Appeal by plaintiffs from a decision and order entered 2 January 2025 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 October 2025.

> *Law Offices of James Scott Farrin, by Coleman M. Cowan, for the plaintiff-appellants.*

> *Attorney General Jeff Jackson, by Special Deputy Attorney General David D. Larson, Jr., for the North Carolina Department of Transportation.*

PER CURIAM.

Plaintiffs Angela Lassiter, Administrator of the Estate of Stacy Bennett and the Estate of Da'Marion Crowell, and Jabarri Thomas appeal from a decision and order, by the North Carolina Industrial Commission, denying Plaintiffs' claim. Plaintiffs allege the Commission erred in concluding Defendant North Carolina Department of Transportation ("NCDOT") did not breach its duty of care. We affirm.

I.     Background

This case involves a fatal vehicle collision at the intersection of Aurelian Springs Road and NC 125 ("Days Crossroads intersection") in Halifax County.  The evidence tended to show as follows:

It was a clear and sunny day on 24 September 2019, as Milar Richardson ("Plaintiffs' driver") drove down Aurelian Springs Road toward a four-way intersection with NC 125, maintained by NCDOT since the 1970s.  Aurelian Springs Road included three traffic control signals:  (1) a "stop ahead" sign mounted on the shoulder of the roadway prior to the intersection, (2) a stop sign at the intersection, and (3) an "overhead flasher" with a "red bouncing ball" located over the intersection.

Vehicles traveling on the intersecting road, NC 125, had the right of way and that road was controlled at the intersection by a blinking yellow light.

Plaintiffs' driver did not slow down nor notice the traffic signs and signals as she drove through the Days Crossroads intersection, and collided with a dump truck traveling on NC 125 killing three passengers and seriously injuring a fourth.

The seriously injured passenger and the estates of two of the deceased passengers brought this matter under the Tort Claims Act (the "Act"), alleging negligence of NCDOT employees for failing to safely design and maintain the intersection.  Plaintiffs alleged, in part, NCDOT "knew or reasonably should have known the intersection was hazardous but failed to repair or correct the dangerous

conditions" at the intersection by changing it to a four-way stop. Plaintiffs also alleged NCDOT "failed to install adequate signage and traffic control devices to make the intersection reasonably safe." NCDOT answered by denying the allegations and asserted, among other defenses, the affirmative defenses of intervening and superseding negligence.

On 13 September 2022, the matter came on for an evidentiary hearing before a deputy commissioner. The deputy commissioner issued a decision and award, finding for Plaintiffs, awarding $1 million each. Defendant appealed to the Full Commission, which on 2 January 2025 issued a Decision and Order denying all claims. In concluding NCDOT did not breach its duty of care, the Commission declined to address the remaining elements of Plaintiffs' negligence claims.

Plaintiffs timely filed their notice of appeal to our Court.

## II.    Analysis

On appeal, Plaintiffs contend the Full Commission's Order should be reversed because no competent evidence or findings of fact exist to support the Full Commission's conclusion Defendant did not breach its duty of care. For the reasons below, we affirm the Full Commission's decision.

### A.  Standard of Review

When considering an appeal from the Commission under the Act, our review is "limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact

justify its conclusions of law and decision." *Drewry v. N.C. Dep't of Transp.*, 168 N.C. App. 332, 337 (2005); *see also* N.C.G.S. § 143-293. This Court is bound by the Commission's findings of fact if there is competent evidence of substance "which directly, or by reasonable inference, tends to support the findings . . . even though there is evidence that would have supported a finding to the contrary." *Keller v. Elec. Wiring Co.*, 259 N.C. 222, 223 (1963) (cleaned up).

## B. Challenged Findings and Conclusions

The Act allows persons to sue state departments or agencies for injuries caused by negligence of state employees. N.C.G.S. § 143-291, *et seq.* "Under the Act, negligence is determined by the same rules applicable to private parties." *Bolkhir v. North Carolina State Univ.*, 321 N.C. 706, 709 (1988).

"Generally, a defendant's negligence will not be presumed from the mere happening of an accident, but, on the contrary, in the absence of evidence on the question, freedom from negligence will be presumed." *Etheridge v. Etheridge*, 222 N.C. 616, 618 (1943).

A plaintiff must show his injuries were the proximate result of a negligent act of a named state employee, acting within the course and scope of his or her employment. *See* N.C.G.S. § 143-291, *et seq.* To establish negligence under the Act, a plaintiff must show "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Bolkhir,* 321 N.C. at 709

(citation omitted).

Our General Assembly has established that NCDOT owes a duty of care to the general public to "plan, design, locate, construct and maintain the public highways in the State of North Carolina, with reasonable care." *Phillips v. N.C. Dep't of Transp.*, 200 N.C. App. 550, 560 (2009); *see also* N.C.G.S. § 143B-346. And, pursuant to N.C.G.S. § 136-30(a), "[a]ll traffic signs and other traffic control devices placed on a highway in the State highway system must conform to the Uniform Manual."[1]

But "NCDOT is vested with broad discretion in carrying out its duties, and the discretionary decisions it makes are not subject to judicial review 'unless [its] action is so clearly unreasonable as to amount to oppressive and manifest abuse.'" *Drewry*, 168 N.C. App. at 338 (citation omitted).

On appeal, Plaintiffs argue that no competent evidence exists to support the Commission's findings that (1) NCDOT performed functional maintenance at the intersection; (2) at the time of the accident, the traffic control devices at the intersection complied with the Manual on Uniform Traffic Control Devices ("MUTCD"); or (3) NCDOT was not on notice that the intersection was unreasonably dangerous. Plaintiffs then argue because the Commission drew its conclusions based on these findings, it erred in concluding NCDOT did not breach its duty of care. We address each argument in turn.

---

[1] The "Uniform Manual" relevant to this case is the 2009 Manual on Uniform Traffic Control Devices ("MUTCD"), which was in effect on the date of the accident.

1. Functional Maintenance

First, we address Plaintiffs' argument there was no competent evidence to support the Commission's finding of fact that NCDOT did not fail to perform functional maintenance at the intersection.

The MUTCD provides "standards" and "guidance" for NCDOT. As to the maintenance of traffic control devices, Section 1A.05 of the MUTCD provides the following "guidance":

> *01    Functional maintenance of traffic control devices should be used to determine if certain devices need to be changed to meet current traffic conditions.*
>
> *02    Physical maintenance of traffic control devices should be performed to retain the legibility and visibility of the device, and to retain the proper functioning of the device.*

(Emphasis in original).

Notably, it is the only instance in the entire manual that the term "functional maintenance" is used, and it is not a defined term.

During trial, both parties presented an expert witness who testified on the issue and meaning of "functional maintenance." Defendant's expert was a professional engineer who worked for NCDOT for 29 years. He testified that NCDOT conducted nighttime visibility studies every three years for secondary roads and every two years for primary roads. Defendant's expert further testified that the February 2017 nighttime visibility study conducted on Aurelian Springs Road did not reveal any traffic control devices were defaced or missing and the signage seemed to

be in working order. A January 2019 study of Aurelian Springs Road did not indicate any required action.

Defendant's expert also explained flasher maintenance occurred at the intersection every six months. Flasher maintenance included checking the computers inside each flasher and verifying that the signal plan and flasher matched, among several other items. Although Plaintiffs' expert disagreed, Defendant's expert testified nighttime visibility studies and flasher maintenance qualified as "functional maintenance," and that this functional maintenance occurred four months prior to Plaintiffs' collision. Thus, we conclude competent evidence supports the Commission determination that "Defendant did perform functional maintenance of the intersection within the required timeframes."

### 2. Traffic Control Devices and Signs

Second, we address Plaintiffs' argument that no competent evidence supports the Commission's findings the traffic control devices at the intersection—a stop sign, an overhead flashing signal, and a stop ahead warning sign—complied with the MUTCD.

Several sections of the MUTCD are relevant authority on this issue. First is Section 1A.05 on the Maintenance of Traffic Control Devices, as cited previously in this opinion. Second, Section 2C.02 provides this "standard" as to the use of warning signs: "01 The use of warning signs shall be based on an engineering study or on engineering judgment."

And Table 2C-4 provides "guidelines" for the placement of warning signs. Specifically, per the details of the intersection in question for this case, it suggests the placement of a warning sign 175 feet in advance of the hazardous condition when the 85th percentile speed of drivers is 45 miles per hour. Section 2C.05 also provides this "guidance":

> *03    Warning signs should be placed so that they provide an adequate [perception response time]. The distances contained in Table 2C-4 are for guidance purposes and should be applied with engineering judgment. Warning signs should not be placed too far in advance of the condition, such that drivers might tend to forget the warning because of other driving distractions, especially in urban areas.*

(Emphasis in original).

### a.  Finding of Fact #18

The Commission found:

> 18. [Plaintiffs' expert witness] opined that the stop ahead warning sign was too far ahead of the intersection to alert motorists of the upcoming stop in violation of the MUTCD – it was 175 feet . . . ahead of the stop sign at the Days Crossroads intersection. However, [Plaintiffs' expert] confirmed that the MUTCD states "[t]he distances contained in Table 2C-4 are for guidance purposes and should be applied with engineering judgment." [Plaintiffs' expert witness] confirmed that having a stop sign, stop ahead warning sign, and the overhead flashing signal were appropriate traffic control devices. He stated that there are "different layers of treatment in there. If someone's ignoring something, well we go to the next level. And obviously, there were different levels of remedial measures here." [Plaintiffs' expert] testified that the vehicle driven by [Plaintiffs' driver], in which Plaintiffs were passengers,

had up to the last 166 feet to either stop or take some action to prevent the subject collision.

The first portion of Finding of Fact #18 that Plaintiffs challenge as unsupported is Plaintiffs' expert witness statement: "confirm[ing] that having a stop sign, stop ahead warning sign, and the overhead flashing signal were appropriate traffic control devices." Plaintiffs contend, at no point did their expert testify that the traffic control devices at the intersection were "appropriate" or otherwise complied with the MUTCD—rather, Plaintiffs' expert clearly explained NCDOT should have known that the traffic control devices were not meeting the current traffic conditions. We disagree.

At trial, Defendant cross-examined Plaintiffs' expert:

> Q.     . . . [T]he fact that there was a stop sign, and then the flashing red signal, and an intersection ahead sign was appropriate under the MUTCD, correct?
>
> A.     Yeah. There's different layers of treatment in there. If someone's ignoring something, [we will] go to the next level. If they ignore that, we go to the next level. And obviously, there were different levels of remedial measures here.
>
> Q.     Right. And I understand that you've got an issue with the stop ahead sign and then the – the route placement sign. But just the – the signage that was out there, assuming it wasn't obscured or in the wrong place, that would have been sufficient in your mind, that was correct under the MUTCD, right?
>
> A.     It's perfectly fine as a starting point. But if we have continual problems, it's not fine. We need to do something with the other approaches. You could leave this approach

the way it is. I'd like to see a dual stop sign just to be sure we've covered our bases, but I want to stop the other direction too.

Although Plaintiffs' expert qualified his response, he responded in the affirmative to the questions about what the MUTCD required at a minimum. It is clear from the transcript and the findings of fact that Plaintiffs' expert believed NCDOT should have done more to maintain the intersection, but his testimony is competent evidence to support the contested finding.

The second portion of Finding of Fact #18 that Plaintiffs challenge as unsupported is the statement that the warning sign was 175 feet ahead of the stop sign at the Days Crossroads intersection. Plaintiffs contend the warning sign was actually 681 feet ahead of the stop sign. Upon reviewing the record, we agree with Plaintiffs on this point. However, we conclude the error in the finding is not material or prejudicial because the Commission did not rely on said difference in coming to its conclusion that the traffic control signals complied with the MUTCD. The Commission acknowledged that Plaintiffs' expert thought the sign was too far ahead of the intersection to give drivers sufficient notice but found that the relevant appropriate distance is not mandated by the MUTCD. Rather, the Commission found the MUTCD provides mere guidelines for the appropriate distance at which to place a "stop ahead" sign but ultimately, pursuant to Section 2C.05, it leaves the decision to be applied with "engineering judgment." Testimony from both of the experts supports that finding.

b. Finding of Fact #17

Third, Plaintiffs challenge as unsupported the finding that the stop sign and the outline of the stop sign were visible to Plaintiffs' driver as she approached the intersection. However, this contention mischaracterizes the Commission's Finding of Fact #7, which describes the testimony of the state trooper who investigated the accident scene. The Commission found:

> 7. [The state trooper] testified that the approach to Days Crossroads on Aurelian Springs Road is relatively straight and flat. When asked whether the I-95 directional sign in front of the stop sign could block the driver's view of the stop sign approaching the intersection, [the state trooper] testified that there was "definitely potential;" however, he later testified that he could clearly see both the I-95 directional sign and the stop sign in the photo . . . when shown by Plaintiffs' counsel during examination, and that the stop sign was visible to [Plaintiffs' driver] had she looked for it as she approached the intersection.

Based on our review of the record, the transcript explicitly and competently supports this finding about the details of the trooper's testimony. The finding is binding on appeal.

c. Finding of Fact #29

The Commission found:

> 29. . . . Defendant adequately . . . complied with the requirements of the MUTCD by meeting the five traffic control requirements for the intersection. The traffic control devices at the intersection complied with the MUTCD. A stop sign, overhead flasher, and stop ahead sign were in place and operational at the time of the collision[.]

Plaintiffs contend the state trooper's testimony is not competent evidence to support ultimate finding #29 that the traffic control devices complied with MUTCD, because the state trooper lacked training and/or experience with the MUTCD and because the state trooper could not have known whether the stop sign was visible to Plaintiffs' driver. Plaintiffs argue: the transcript shows that the trooper did not actually walk back up Aurelian Springs Road to look at the view that Plaintiffs' driver would have seen as she approached the intersection.

But the Commission made its own determination about the credibility of the state trooper's opinions, as is its prerogative. *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433–34 (1965). And, the state trooper's testimony is competent evidence to support a finding that the traffic control devices complied with the MUTCD's visibility requirements: he testified to over fifteen years of experience with the State Highway Patrol, went to the scene of the accident, interviewed the drivers, prepared an accident report, and determined the traffic control devices were in working condition and visible on the day of the accident. Together, the state trooper's testimony regarding the accident is competent evidence to support a determination the traffic control devices were MUTCD compliant.

### 3. Notice of Dangerous Conditions

Plaintiffs allege that no competent evidence supports the Commission's finding of fact that Defendant was not on notice of hazardous or dangerous conditions of the intersection.

"The happening of an injury does not raise the presumption of negligence. There must be evidence of notice either actual or constructive." *Smith v. City of Hickory*, 252 N.C. 316, 318 (1960).

> [N]otice may be either actual, which brings the knowledge of a fact directly home to the party, or constructive, which is defined as information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.

*Phillips*, 200 N.C. App. at 558 (quoting *State v. Poteat*, 163 N.C. App. 741, 746 (2004)). In contemplating the issue of notice, the fact finder considers whether a prior pattern of events occurred that should have triggered a re-evaluation by NCDOT. *See Turner v. North Carolina Dep't of Transp.*, 223 N.C. App. 90, 97–98 (2012).

With regard to Defendant's notice of hazardous conditions at the intersection, the Commission found:

> 29.     . . . [T]he Full Commission finds that Plaintiffs have not shown that Defendant acted unreasonably in failing to implement an all-way stop at the intersection. In reaching this finding, the Full Commission addresses Plaintiffs' arguments . . . that Defendant had knowledge of prior, similar accidents at the intersection; and that Defendant's prior studies designated the intersection as "dangerous" and therefore put Defendant on notice that an all-way stop was an economical way to address safety concerns at the intersection.
>
> Although Plaintiffs argue that Defendant was on notice of the dangerous conditions of the intersection prior to the 2019 collision, the Full Commission notes that Plaintiffs' proffered evidence of *only two prior, similar*

- 13 -

*motor vehicle collisions in approximately 37 years* in which a vehicle traveling in the direction that [Plaintiffs' driver] was traveling, failed to observe the stop traffic control device and hit another vehicle. The Full Commission finds that given the lack of prior similar accidents in the years preceding the collision, the Full Commission does not find that Defendant was on notice of the "dangerous conditions" of the intersection and *assigns great weight to [Defendant's expert] testimony that he would not consider the intersection "dangerous," given the lack of injury crashes at the intersection.*

Plaintiffs also contend that the 2010 studies designated the intersection as dangerous and created a duty for Defendant to install an all-way stop at the intersection. However, the Full Commission finds that Plaintiffs have failed to demonstrate how the studies created such a duty. While the conversion study mentioned the potential benefits of converting the intersection to an all-way stop, the intersection did not meet the minimum criteria for the implementation of an all-way stop. In reaching this finding, *the Full Commission assigns greater weight to [Plaintiffs' expert] testimony that the intersection did not meet the minimum criteria to install a traffic signal.* Additionally, the Full Commission gives less weight to the use of the word "dangerous" in the 2010 feasibility study because the Full Commission finds that the study was drafted by outside consultants, not NCDOT employees[.]

(Emphasis added).

In challenging this finding as unsupported by competent evidence, Plaintiffs point out many pieces of evidence which would serve to contradict the Commission's ultimate determination that Defendant was not on notice of hazardous and dangerous conditions. But Plaintiffs fail to show why any of the evidence cited by the Commission is incompetent to support the finding.

Based on our review, the record contains the evidence cited by the Commission: (1) in 37 years, only two similar motor vehicle collisions occurred at the Days Crossroads intersection in which a vehicle traveling in the direction that Plaintiffs' driver was traveling, failed to observe the stop signals, and hit another vehicle; and (2) Plaintiffs' expert agreed the placement of a stop light at the intersection would cost approximately $150,000 and would not have been a good use of state funds. Because this evidence supports a finding that Defendant was not on notice of hazardous conditions at the intersection of concern, the finding is binding on appeal.

### 4. Conclusions of Law

Finally, Plaintiffs argue that the findings of fact do not support a conclusion of law that Defendant did not breach its duty of care to Plaintiffs by electing not to install an all-way stop at the intersection.

"If in any reasonable view of it, the evidence is sufficient to support the critical findings and conclusions of the Industrial Commission, such findings and conclusions must be upheld." *Taylor v. Stonewall Jackson Manual Training & Indus. Sch.*, 5 N.C. App. 188, 190 (1969) (citation omitted).

The findings of fact that are supported by competent evidence show that: (1) NCDOT performed functional maintenance at the intersection; (2) the traffic control devices complied with the MUTCD, and (3) the Commission was not on notice of "dangerous" or "hazardous" conditions at the intersection. These findings competently support the conclusion that Defendant did not breach its duty of care.

### III.    Conclusion

Based on the foregoing, we affirm the Commission's decision.

AFFIRMED.

Panel consisting of Chief Judge DILLON and Judges HAMPSON and STADING.

Report per Rule 30(e).