BOBBY L. ROBERTS, EMPLOYEE/PLAINTIFF v. CENTURY CONTRACTORS, INC., EMPLOYER, AND ROYAL & SUNALLIANCE INSURANCE COMPANY, CARRIER/DEFENDANTS

No. COA03-93

(Filed 17 February 2004)

1. **Workers' Compensation— mediated settlement agreement—mutual mistake—maximum medical improvement**

The Industrial Commission did not err in a workers' compensation case by voiding the parties' mediated settlement agreement based on mutual mistake of fact, and the Commission's opinion and award filed 18 September 2002 is affirmed because: (1) the Commission made explicit findings that the parties believed that plaintiff had reached maximum medical improvement and, further, that they materially relied upon this fact in reaching a settlement; and (2) there was competent record evidence to support the Commission's findings that the parties were mistaken as to whether plaintiff had reached maximum medical improvement and that this mistaken fact was material.

2. **Workers' Compensation— jurisdiction—appeal to Court of Appeals**

The Industrial Commission's opinion and award in a workers' compensation case issued on 10 March 2003 must be vacated, because: (1) an appeal to the Court of Appeals divests the Industrial Commission of jurisdiction to issue opinions and awards; (2) although an appeal is not perfected until docketed in the Court of Appeals, perfection relates back to the time that

notice of appeal is given; and (3) defendants gave notice of appeal of the Commission's 18 September 2002 award, thus divesting the Commission of jurisdiction to issue its 10 March 2003 award.

Appeal by defendants from Opinions and Awards filed 18 September 2002 and 10 March 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 November 2003.

*Richard W. Rutherford for plaintiff-appellee.*

*McAngus, Goudelock & Courie, by Robert B. Starnes, for defendants.*

LEVINSON, Judge.

Plaintiff (Bobby Roberts) suffered a compensable injury by accident on 28 July 1993 when he was struck by a pipe while working for Century Contractors, Incorporated, causing trauma to his neck and back. Defendants admitted liability, and plaintiff sought treatment for his injuries with Dr. James Markworth of Southeastern Orthopaedic Clinic. Dr. Markworth diagnosed plaintiff as having some narrowing of the cervical spinal canal and some degeneration of multiple levels of the cervical disks, with bulging of some of the discs. Dr. Markworth performed an anterior cervical discectomy infusion at C3-4, C4-5, C5-6, and C6-7 with bone grafts being placed at each location.

Following this surgery, Dr. Markworth reviewed plaintiff's x-rays and determined that while the films showed a line at the inferior margins of the C3-4 graft, C5-6 graft, and maybe the C6-7 graft, these areas appeared to be remolding nicely. Dr. Markworth subsequently indicated that plaintiff was at maximum medical improvement and stopped treating plaintiff. A physician's assistant at Southeastern Orthopaedic Clinic continued to treat plaintiff. Because he was still experiencing pain, plaintiff issued a request for a second medical opinion on 3 April 1998.

On 2 June 1998, plaintiff saw Dr. Allen Friedman for a second medical opinion. Dr. Friedman noted that there was a question of lucency below the graft at C5-6 and that x-rays needed to be repeated to be sure that the fusion was stable. Dr. Friedman indicated his concern to plaintiff that current x-rays needed to be obtained to be certain as to whether the fusion was solid.

The parties attended a mediation on 13 May 1998. The negotiation resulted in a settlement amount of $125,000 and payment of related

medical expenses. Following his visit to Dr. Friedman, plaintiff executed the settlement agreement that had been negotiated on 13 May 1998. The settlement agreement contained a waiver of any right to make further claims in regard to plaintiff's injury. The settlement agreement was approved by the North Carolina Industrial Commission on 25 June 1998.

Plaintiff subsequently filed a claim for Workers' Compensation, seeking compensation and medical benefits for the same injuries which were addressed in the settlement agreement. Plaintiff alleged that the Commission should set aside the settlement agreement pursuant to N.C.G.S. § 97-17 due to mutual mistake of fact. In support of this allegation, plaintiff offered Dr. Markworth's deposition testimony that his office's diagnosis of maximum medical improvement was a mistake.

The Full Commission found that the parties had mistakenly relied on Dr. Markworth's diagnosis of maximum medical improvement and that this fact was material to the settlement agreement. The Full Commission set aside the agreement and awarded plaintiff compensation and medical benefits in an Opinion and Award filed on 18 September 2002. Defendants gave Notice of Appeal, which was received by the Industrial Commission on 8 October 2002. While the appeal was pending, the Full Commission filed another Opinion and Award on 10 March 2003, which also set aside the settlement agreement due to mutual mistake.

Defendants appeal from both Opinions and Awards, contending (1) the first Opinion and Award must be reversed because the Full Commission erred in setting aside the parties' mediated settlement agreement on the basis of mutual mistake of fact, and (2) the second Opinion and Award must be vacated because the Full Commission lacked jurisdiction to issue it. We affirm the 18 September 2002 Opinion and Award, and vacate the 10 March 2003 Opinion and Award.

---

[1] We first address defendants' argument that the Commission committed reversible error when it voided the parties' settlement agreement due to mutual mistake of fact.

On appeal from an opinion and award of the North Carolina Industrial Commission, the standard of review is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support

the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Industrial Commission's findings of fact "are conclusive on appeal if supported by competent evidence even though there is evidence to support a contrary finding." *Murray v. Associated Insurers, Inc.*, 341 N.C. 712, 714, 462 S.E.2d 490, 491 (1995). "[T]he full Commission is the sole judge of the weight and credibility of the evidence. . . ." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. "[T]his Court is not at liberty to reweigh the evidence and to set aside the findings . . . simply because other . . . conclusions might have been reached." *Baker v. City of Sanford*, 120 N.C. App. 783, 787, 463 S.E.2d 559, 562 (1995) (citation and quotation marks omitted). This Court reviews the Commission's conclusions of law *de novo*. *Griggs v. E. Omni Constructors*, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003).

The North Carolina Workers' Compensation Act permits parties to enter into settlement agreements, subject to approval by the Commission, "so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of [the Act]." N.C.G.S. § 97-17(a) (2003).

> No party to any agreement for compensation approved by the Commission shall deny the truth of the matters contained in the settlement agreement, unless the party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or <u>mutual mistake</u>, in which event the Commission may set aside the agreement.

*Id.* (emphasis added). "Compromise settlement agreements, including mediated settlement agreements [in Workers' Compensation cases], are governed by general principles of contract law." *Lemly v. Colvard Oil Co.*, 157 N.C. App. 99, 103, 577 S.E.2d 712, 715 (2003) (citation and internal quotation marks omitted).

"It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). Therefore, where a mistake is common to both parties and concerns a material past or presently existing fact, such that there is no meeting of the minds, a contract may be avoided. *Howell v. Waters*, 82 N.C. App. 481, 486, 347 S.E.2d 65, 69 (1986).

To afford relief, the mistake must be of a certain nature. The fact about which the parties are mistaken must be "an existing or past

fact." *Id.* (citation omitted). The mistaken fact must also be material, which has been described to mean the following:

> [I]t must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties.

*Id.* (quoting *MacKay v. McIntosh*, 270 N.C. 69, 73-74, 153 S.E.2d 800, 804 (1967)). *See also Caudill v. Chatham Mfg. Co.*, 258 N.C. 99, 128 S.E.2d 128 (1962) (discussing, but not applying, the doctrine of mutual mistake of fact in a Workers' Compensation case one year before the General Assembly amended the Act to include mutual mistake as a ground for avoiding a settlement agreement).

Additionally, relief from a contract due to mistake of fact will be had only where <u>both</u> parties to an agreement are mistaken. *Thompson-Arthur Paving Co. v. Lincoln Battleground Assocs., Ltd.*, 95 N.C. App. 270, 278, 382 S.E.2d 817, 822 (1989). "Thus, as a general rule relief will be denied where the party against whom it is sought was ignorant that the other party was acting under a mistake and the former's conduct in no way contributed thereto." *Id.* (citation and quotation marks omitted). Likewise, a party who assumed the risk of a mistaken fact cannot avoid a contract. *Id.*

> A party bears the risk of a mistake when
>
> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

*Restatement (Second) Contracts*, § 154 (1979) (quoted and applied in *Howell*, 82 N.C. App. at 488, 347 S.E.2d at 70).

What a party believes the facts and circumstances to be and whether those beliefs induce a party to act are questions concerning that party's mental state. Such questions about the operation of a party's mind have been held to be questions of fact. *See Farmers Bank v. Michael T. Brown Distribs., Inc.*, 307 N.C. 342, 348, 298

ROBERTS v. CENTURY CONTR'RS, INC.

[162 N.C. App. 688 (2004)]

S.E.2d 357, 360 (1983). Likewise, "[w]hether [a party] has assumed the risk of mistake is a question of fact . . . ." *Thompson-Arthur Paving Co.*, 95 N.C. App. at 278, 382 S.E.2d at 822.

In the instant case, the Commission made the following findings of fact:

10. The x-rays taken in April 1998, six months after Dr. Markworth or Southern Orthopaedic Clinic had last treated plaintiff, indicated Dr. Markworth's diagnosis of maximum medical improvement . . . was a mistake. Dr. Markworth testified, and the Full Commission finds as fact, that advising plaintiff that he was at maximum medical improvement at that time was a mistake.

. . .

13. The Full Commission finds as fact, based on reasonable inference drawn from the evidence before it, that the finding of maximum medical improvement and the impairment rating given by Dr. Markworth were material to the settlement of this claim and that both parties relied on this information in entering into settlement negotiations.

14. Plaintiff testified, and the Full Commission finds as fact, that being told he was at maximum medical improvement was material to his decision to settle his case and that he would not have settled his case had he known there was a non-union of his cervical spine and that he was not at maximum medical improvement.

15. On April 3, 1998, plaintiff had requested a second opinion from Alan Friedman, M.D. During mediation, the parties agreed to plaintiff getting the second opinion.

16. Dr. Friedman saw plaintiff on June 2, 1998. This appointment was eight days prior to the signing of the settlement agreement. Plaintiff did not provide Dr. Friedman with his past medical records. Dr. Friedman reviewed x-rays from October but was not certain as to the date of the x-rays. Dr. Friedman indicated x-rays needed to be repeated and [sic] to be sure the fusion was stable. Dr. Friedman indicated his concern to plaintiff that current x-rays needed to be obtained to be sure the fusion was solid or not; however, the carrier would not authorize the taking of new x-rays. Dr. Friedman testified, and the Full Commission finds as fact, that plaintiff was not at maximum

medical improvement with regard to his cervical spine when he examined plaintiff on June 2, 1998.

. . . .

20. The greater weight of the evidence indicates there was a mutual mistake with regard to plaintiff's medical condition at the time of the signing of the settlement agreement.

Thus, the Commission made explicit findings that the parties believed that plaintiff had reached maximum medical improvement and, further, that they materially relied upon this fact in reaching a settlement. Defendants' essential argument on appeal is that because plaintiff either knew that there was a possibility that his fusion was not solid or was negligent in not declining to sign the settlement agreement, "mutual mistake is a legal impossibility" in this case. As the facts also support a contrary conclusion, we do not agree.

In making its findings, the Commission necessarily had to consider the issue of whether plaintiff assumed the risk that he may not have reached MMI and/or that he may have had an unsatisfactory fusion. Plaintiff's primary physician advised him that he had reached maximum medical improvement, and another physician expressed possible doubt about that conclusion. The doubt expressed by the second physician was never confirmed or investigated due to circumstances which may not necessarily be attributed to the plaintiff. The plaintiff testified that he based his decision to sign the settlement agreement on Dr. Markworth's diagnosis and that he would not have settled his case if Dr. Friedman had told him that there was no fusion in the back of his neck. Thus, there is competent record evidence to support the Commission's findings that the parties were mistaken as to whether plaintiff had reached maximum medical improvement and that this mistaken fact was material. These findings are, therefore, binding on appeal. *Murray*, 341 N.C. at 714, 462 S.E.2d at 491.

We note that when a party asserts assumption of risk as a defense to recision of a compromise settlement on the grounds of mutual mistake under G.S. § 97-17(a), it is the better practice for the Industrial Commission to make a specific finding detailing the reason(s) the Commission rejects or accepts this contention.

This assignment of error is overruled. We affirm the Commission's Opinion and Award filed 18 September 2002.

**[2]** We next address defendants' contention that the Commission's Opinion and Award issued 10 March 2003 must be vacated because the Commission was without authority to issue it.

An appeal to this Court divests the Industrial Commission of jurisdiction to issue opinions and awards. N.C.G.S. § 1-294 (2003); *Andrews v. Fulcher Tire Sales & Serv.*, 120 N.C. App. 602, 606-07, 463 S.E.2d 425, 428 (1995). Though an appeal is not perfected until docketed in this Court, perfection relates back to the time that Notice of Appeal is given. *Woodard v. North Carolina Local Governmental Employees' Retirement Sys.*, 110 N.C. App. 83, 87, 428 S.E.2d 849, 851 (1993).

In the instant case, the Commission filed an Opinion and Award on 18 September 2002. Defendants gave Notice of Appeal of that Opinion and Award, which was received by the Commission on 8 October 2002. At this point, the Commission was divested of jurisdiction in the matter. Nevertheless, on 10 March 2003, the Commission filed another Opinion and Award even though the appeal of the first order was still pending. Therefore, the second Opinion and Award was issued without jurisdiction, and is hereby vacated.

The Opinion and Award filed 18 September 2002 is affirmed; the Opinion and Award filed 10 March 2003 is vacated.

Chief Judge EAGLES concurred prior to 31 January 2004.

Chief Judge MARTIN concurs.