***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The following were marked and received before the Deputy Commissioner as:
 EXHIBITS *Page 2 
1. Plaintiff's Exhibit 1 — Collection of medical records; correspondence from Aimee Gibson, defense counsel, and Plaintiff's counsel; vocational rehabilitation records; Industrial Commission forms; and a subpoena from Guilford County Child Support.
2. Plaintiff's Exhibit 2 — Subpoena, letter from William T. Griffin, and Plaintiff's March 15, 2007 medical record of work restrictions from Greensboro Orthopaedic.
3. Plaintiff's Exhibit 3 — Subpoena and Plaintiff's medical records from Greensboro Orthopaedic.
4. Defendant's Exhibit 1 — Packet sent to the Industrial Commission on June 4, 2008 including the Compromise Settlement Agreement, medical records, Plaintiff's attorney fee petition, child support information and correspondence between defense counsel and the Industrial Commission regarding submission of the documents.
5. Defendant's Exhibit 2 — Mediated settlement agreement dated March 18, 2008.
6. Defendant's Exhibit 3 — Order Approving Compromise Settlement Agreement filed June 19, 2008.
7. Defendant's Exhibit 4 — Proposed Pre-Trial Agreement.
 *********** PLAINTIFF'S MOTION FOR ADDITIONAL EVIDENCE
Plaintiff moved for an Order allowing the inclusion of certain additional documents into evidence. Defendants objected to the admission of this additional evidence. After consideration of the arguments of the parties, Plaintiff's Motion is hereby DENIED.
 *********** ISSUES
The issues before the Full Commission are: *Page 3 
1. Whether the Compromise Settlement Agreement approved by the Industrial Commission on June 19, 2008 should be set aside pursuant to N.C. Gen. Stat. § 97-17 for error due to fraud, misrepresentation, undue influence or mutual mistake.
2. Whether Plaintiff has brought the current claim without reasonable grounds solely to harass Defendants and whether Defendants are entitled to costs and attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 for having to defend this claim.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On March 28, 2008, the parties participated in a voluntary mediated settlement conference. Plaintiff was represented by attorney, Kenneth Johnson during the conference. Plaintiff was represented by attorney, Christopher Wilkie of Lewis and Daggett, prior to Mr. Johnson.
2. The parties reached a final settlement of Plaintiff's claim and executed a mediated settlement agreement during the mediated settlement conference. The mediated settlement agreement provided, in part, that Plaintiff would receive $105,000.00 for settlement of his claim.
3. On May 27, 2008, the parties executed a final Compromise Settlement Agreement and Release. The Compromise Settlement Agreement and Release provided, in part, as follows:
 Plaintiff is also aware . . . that, upon execution of this Final Compromise Settlement Agreement and Release and approval of the same by the North Carolina Industrial Commission, he will be forever barred from any further benefits whatsoever under the North Carolina Workers' Compensation Act on account of his injury by accident on or about January 30, 2006, and will thereafter be unable to reopen his case if he has a change in condition. *Page 4 
 The employee hereby knowingly and intentionally waives his right to any further benefits whatsoever under the terms and provisions of the North Carolina Workers' Compensation Act on account of his injury by accident on or about January 30, 2006.
 Plaintiff acknowledges that this settlement agreement will be submitted to the Industrial Commission for approval with copies of all medical and rehabilitation records known to exist for plaintiff pertaining to the injury referred to herein. Plaintiff warrants, represents, and agrees that defendants currently have in their possession copies of all medical and rehabilitation records known to exist for plaintiff, or that plaintiff has provided defendants copies of any additional records with this signed agreement. The parties to this agreement hereby waive further hearings before the North Carolina Industrial Commission and, in presenting this agreement for approval, represent that they have made available to the Commission with said agreement all medical and rehabilitation reports known to exist. In this connection, the parties hereby stipulate and agree to waive any rights they may have to contest the approval of this agreement based upon any failure to provide copies of medical or rehabilitation records to the Industrial Commission with this agreement for approval.
4. The executed Compromise Settlement Agreement or clincher was then submitted to the Industrial Commission. The Compromise Settlement Agreement and Release were reviewed and the agreement was approved by Special Deputy Commissioner Elizabeth Maddox on June 19, 2008.
5. After approval of the Compromise Settlement Agreement and Release, the carrier issued three checks, one to Plaintiff's prior attorney, Mr. Wilkie, one to Plaintiff's current attorney, Mr. Johnson and one to Plaintiff. As was agreed in the mediated settlement agreement and Compromise Settlement Agreement and Release, Plaintiff's attorney, Mr. Johnson, paid $30,000.00 of the settlement proceeds to satisfy an existing child support lien on behalf of Plaintiff.
6. Plaintiff acknowledged that he signed the mediated settlement agreement and the Compromise Settlement Agreement and Release. *Page 5 
7. Plaintiff testified that he reluctantly signed the mediated settlement agreement and the Compromise Settlement Agreement and Release. However, Plaintiff admitted there was no pressure placed on him to sign either the mediated settlement agreement or the Compromise Settlement Agreement and Release.
8. Plaintiff testified he did not want to settle his claim for the amount indicated as he did not think it was fair and reasonable. Plaintiff has further alleged he did not want to settle his claim and did so due to a threat of jail time. Finally, Plaintiff indicated that he did not want to settle his claim without receiving the medical record from his independent medical evaluation appointment with Dr. Del Curling. Despite his alleged reluctance, Plaintiff stated he did sign the mediated settlement agreement and the Compromise Settlement Agreement and Release.
9. It was Plaintiff's belief that the record from the independent medical evaluation with Dr. Curling would be submitted to the Industrial Commission with the Compromise Settlement Agreement and Release for approval.
10. The Full Commission finds Plaintiff's allegations conflict with the greater weight of the evidence for several reasons. First, Plaintiff was aware that no medical record from Dr. Curling's office had been obtained because both parties tried to obtain it, to no avail due to Dr. Curling's own health problems. Therefore, it could not be submitted to the Industrial Commission with the Compromise Settlement Agreement and Release. Second, Plaintiff signed the Compromise Settlement Agreement and Release, which specifically provided that he was waiving any rights he may have to contest approval of the agreement based on any failure to provide copies of medical records to the Industrial Commission with the agreement for approval. Finally, Plaintiff stated that he signed both the mediated settlement agreement and Compromise Settlement Agreement and Release, but could not recall reading them. Plaintiff's counsel *Page 6 
testified that Plaintiff was given the agreement to read and sign when he went to Mr. Johnson's office. The Full Commission finds that Plaintiff signed the agreement freely and knew that he was making a full and final settlement of his claim.
11. Mr. Johnson indicated the settlement was fair and reasonable based on all circumstances and that the Compromise Settlement Agreement and Release should be upheld. 12. Plaintiff's attorney, Kenneth Johnson, obtained a fair and just settlement for Plaintiff and advised Plaintiff that it was in his best interest to sign the mediated settlement agreement at the mediation.
13. The Full Commission finds the greater weight of the evidence does not support the Plaintiff's allegations that his attorney exerted fraud, undue influence, misrepresentation or coercion through the threat of jail time to get him to sign the Compromise Settlement Agreement and Release. Plaintiff's attorney testified that there was no error due to fraud, undue influence, misrepresentation, or mutual mistake and that Plaintiff signed the mediated settlement agreement and Compromise Settlement Agreement and Release of his own free will and the Full Commission agrees. There is no credible evidence to the contrary.
14. The Full Commission finds as fact that Plaintiff did not enter the Compromise Settlement Agreement and Release or the mediated settlement agreement due to fraud, undue influence, or misrepresentation.
15. No evidence was introduced indicating that Plaintiff entered into the mediated settlement agreement or Compromise Settlement Agreement and Release due to error resulting from a mutual mistake of fact. If there was a mistake of fact, it was unilateral to Plaintiff and was not mutual. Defendants knew they were not obligated to pay any additional money to Plaintiff after settlement of this claim. Defendants knew no medical record from Dr. Curling *Page 7 
would be submitted to the Industrial Commission with the Compromise Settlement Agreement and Release, as one had not been obtained.
16. There has been no evidence presented showing fraud, undue influence, misrepresentation or mutual mistake. The Full Commission finds that Plaintiff brought this claim without reasonable grounds.
17. Defendants have incurred costs, including attorneys fees, defending this claim. Defendants' attorney, Briayn G. Smith, submitted an affidavit dated December 21, 2010, made part of this record, detailing billable hours incurred since the reopening of this claim due to Plaintiff's filing of a Form 33. Through December 13, 2010, Defendants' attorney expended 59.7 hours at the rate of $132.00 per hour, for a total of $7,880.40. The Full Commission finds this cost to be reasonable.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. A settlement agreement approved by the Commission is binding on the parties as an award of the Commission. Holden v. Boone,153 N.C. App. 254, 569 S.E.2d 711 (2002). In order for a party to set aside a Compromise Settlement Agreement, the moving party has the burden of proving that there has been error due to fraud, misrepresentation, undue influence, mutual mistake or that the agreement was not fair and just and, therefore, should not have been approved. N.C. Gen. Stat. § 97-17(a); Vernon v. Steven L. MabeBuilders, 336 N.C. 425, 444 S.E.2d 191 (1994).
2. Compromise settlement agreements, including mediated settlement agreements [in Workers' Compensation cases], are governed by general principles of contract law." Roberts v. Century Contractors,Inc., *Page 8 162 N.C. App. 688, 592 S.E.2d 215 (2004) (quoting Lemly v. Colvard OilCo., 157 N.C. App. 99, 577 S.E.2d 712 (2003)). N.C. Gen. Stat. § 97-17 embodies those principles of contract law which do not permit a party to benefit where it has induced an agreement through fraud, misrepresentation, or undue influence, or where the agreement is based upon a mutual mistake of fact. SeeStrong's, North Carolina Index §§ 41-43 (2002).
3. In order to set-aside a settlement agreement for mistake of fact, the mistake must be mutual and not unilateral. Roberts v. CenturyContractors, Inc., 162 N.C. App. 688, 592 S.E.2d 215 (2004). Defendants knew they were not obligated to pay any additional expenses to Plaintiff after settlement of his claim and this is clearly stated in the mediated settlement agreement and the Compromise Settlement Agreement and Release. There was no mutual mistake of fact in this case.
4. In this matter, Plaintiff has failed to meet the burden of proving any of the aforementioned categories of error set forth in N.C. Gen. Stat. § 97-17. There was no fraud, misrepresentation, undue influence, mutual mistake and the agreement was fair and just. Accordingly, the Full Commission concludes as a matter of law that there is no legal authority upon which to set aside the agreement. N.C. Gen. Stat. § 97-17; Vernon v. Steven L. MabeBuilders, 336 N.C. 425, 444 S.E.2d 191 (1994). The Compromise Settlement Agreement and Release approved by the Industrial Commission on June 19, 2008 shall continue in full force and effect.
5. Under the provisions of N.C. Gen. Stat. § 97-88.1, the Commission may, in its discretion, assess the whole cost of the proceedings upon a party who is found to have brought, prosecuted, or defended a hearing without reasonable ground. N.C. Gen. Stat. § 97-88.1. The purpose of this section is to deter stubborn, unfounded litigiousness which is inharmonious with *Page 9 
the purpose of the Workers' Compensation Act to provide compensation to an injured employee. Sparks v. Mountain Breeze Restaurant FishHouse, Inc., 55 N.C. App. 663, 286 S.E.2d 575 (1982). Plaintiff brought this claim without reasonable grounds, and as such, the assessment of costs under N.C. Gen. Stat. § 97-88.1 is proper, justified and the amount of $7,880.40 is reasonable.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's request to set aside the Compromise Settlement Agreement and Release approved by the Industrial Commission on June 19, 2008 is hereby DENIED.
2. Plaintiff shall pay Defendant $7,880.40 for the costs incurred, including attorney fees in defending this claim from Plaintiff's filing of the Form 33 up to December 13, 2010.
This ___ day of June, 2011.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 10 
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1