An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-552

Filed 6 May 2026

North Carolina Industrial Commission, Nos. TA-26021, TA-26022

MARY ANN DAVIS, Administratrix of the Estate of TAYLOR NICOLE THOMPSON and Administratrix of the Estate of MEGAN MARIE DAVIS, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION and NORTH CAROLINA BOARD OF TRANSPORTATION, Defendants.

Appeal by plaintiff from order entered 19 February 2025 by the North Carolina Industrial Commission. Heard in the Court of Appeals 13 January 2026.

> *Vannoy, Colvard, Triplett & Vannoy, PLLC, by John G. Vannoy and Brandon York, and Sigmon, Clark, Mackie, Hanvey & Ferrell, P.A., by Jason White, for plaintiff-appellant.*

> *Attorney General Jeff Jackson, by Special Deputy Attorney General David D. Larson, Jr., for defendants-appellees.*

ZACHARY, Judge.

Plaintiff Mary Ann Davis, as administratrix of the estates of Taylor Nicole Thompson and Megan Marie Davis, appeals from an order of the North Carolina Industrial Commission denying Plaintiff's claim under the North Carolina Tort Claims Act that Defendants North Carolina Department of Transportation

("NCDOT") and North Carolina Board of Transportation negligently failed to replace a certain breakaway cable terminal ("BCT") guardrail end treatment on US Highway 52 in Stokes County, North Carolina, resulting in the deaths of two young women. After careful review, we affirm the Commission's order.

## I.    Background

This matter arrives at this Court for review for a second time. *See Davis v. N.C. Dep't of Transp.* (*Davis I*), 296 N.C. App. 775, 909 S.E.2d 395, 2024 WL 4948776 (2024) (per curiam) (unpublished). The full factual and procedural background of this case may be found in the prior opinion; we recite here only those facts pertinent to the appeal before us.

In *Davis I*, Plaintiff argued that "the Commission erred by applying an erroneous standard of care and by determining that the [NC]DOT was not negligent." *Id.* at *2. Concerning the standard of care, we concluded that it was "not apparent from the findings and conclusions what standard of care the Commission applied or how it applied that standard." *Id.* at *4. Regarding the negligence issue, we determined that "[e]xcept for a very few findings, or pieces thereof, and one ultimate finding—that Plaintiff had failed to prove the essential elements of negligence—the findings [were] merely recitations of the evidence"; consequently, "there [were] insufficient findings of fact for this Court to review to determine if findings of fact supported by competent evidence support[ed] the Commission's conclusions of law." *Id.*

Accordingly, we vacated the order and remanded to the Commission with instructions to "(1) make findings of fact based on the evidence, (2) apply the 'reasonable care' standard of care, and (3) make conclusions of law supported by those findings in light of the correct standard of care." *Id.* at *5. The "correct standard of care," *id.*, was articulated in *Phillips ex rel. Bates v. North Carolina Department of Transportation*: "[NC]DOT's duty to the general public is to plan, design, locate, construct and maintain the public highways in the State of North Carolina, with reasonable care." 200 N.C. App. 550, 560, 684 S.E.2d 725, 732 (2009) (cleaned up) (quoting one of the Commission's findings and determining that it was consistent with N.C. Gen. Stat. § 143B-346 (2025)).

Upon remand, the Commission again denied Plaintiff's claims in an order entered on 19 February 2025. The Commission quoted the standard of care expressed in *Phillips* and concluded:

> Plaintiff has failed to prove that Defendants' decisions and actions regarding the installation and maintenance of the guardrail end treatment struck in this accident were unreasonable, that Defendants' determination not to replace the BCT guardrail end treatment prior to 24 November 2014 was unreasonable, or that Defendants had actual or constructive notice that a dangerous condition existed at the accident location prior to 24 November 2014. Therefore, Plaintiff has failed to meet her burden of showing that Defendants breached a duty which proximately caused injury.

(Citations and emphasis omitted).

Plaintiff filed timely notice of appeal.

## II.    Discussion

Plaintiff advances two issues on appeal: 1) whether the Commission erred by requiring Plaintiff "to show that Defendant[s] violated [their] own policies" and 2) whether the Commission erred in concluding that Plaintiff failed to prove that Defendants acted negligently.

### A. Standard of Review

Our review of an opinion from the Commission is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Roberts v. Century Contr'rs, Inc.*, 162 N.C. App. 688, 690–91, 592 S.E.2d 215, 218 (2004) (citation omitted). The "Commission's findings of fact are conclusive on appeal if supported by competent evidence even though there is evidence to support a contrary finding." *Id.* at 691, 592 S.E.2d at 218 (cleaned up). "Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Allred v. Exceptional Landscapes, Inc.*, 227 N.C. App. 229, 232, 743 S.E.2d 48, 51 (2013). "The full Commission is the sole judge of the weight and credibility of the evidence. This Court is not at liberty to reweigh the evidence and to set aside the findings simply because other conclusions might have been reached." *Roberts*, 162 N.C. App. at 691, 592 S.E.2d at 218 (cleaned up). "This Court reviews the Commission's conclusions of law de novo." *Id.* (italics omitted).

### B. Standard of Reasonable Care

Plaintiff has raised a claim against Defendants under the North Carolina Tort Claims Act. "Under the Tort Claims Act, jurisdiction is vested in the . . . Commission to hear claims against state departments, institutions and agencies for personal injuries or damages sustained by any person as a result of the negligence of a state officer, agent or employee acting within the scope of his employment." *Frazier v. Murray*, 135 N.C. App. 43, 47, 519 S.E.2d 525, 528 (1999), *appeal dismissed*, 351 N.C. 354, 542 S.E.2d 209 (2000). The Commission must decide whether the asserted injury "arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority" and whether the wrong occurred "under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." N.C. Gen. Stat. § 143-291(a).

"Under the Act, negligence is determined by the same rules as those applicable to private parties." *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). Thus, a "[p]laintiff must show that (1) [the] defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Phillips*, 200 N.C. App. at 556, 684 S.E.2d at 730 (citation omitted). "The burden of proof as to negligence is on the plaintiff." *Drewry v. N.C. Dep't of Transp.*, 168 N.C. App. 332, 337, 607 S.E.2d 342, 346 (cleaned up), *disc. review denied*, 359 N.C. 410, 612 S.E.2d 318 (2005).

Consistent with N.C. Gen. Stat. § 143B-346, "[NC]DOT's duty to the general public is to plan, design, locate, construct and maintain the public highways in the State of North Carolina, with reasonable care." *Phillips*, 200 N.C. App. at 560, 684 S.E.2d at 732 (cleaned up). "North Carolina courts have recognized the jurisdiction of the . . . Commission to determine whether discretionary acts performed by employees or agents of the State were negligent and whether they proximately caused injury to a claimant." *Zimmer v. N.C. Dep't of Transp.*, 87 N.C. App. 132, 136, 360 S.E.2d 115, 118 (1987).

In the case at bar, the issue is whether Defendants acted negligently in the maintenance of US Highway 52 by failing to replace a certain BCT guardrail end treatment with an upgraded guardrail end treatment.

## C. Violation of NCDOT Policy

Plaintiff first argues that the "Commission's focus upon Defendant[s'] 'policies' makes clear that it required Plaintiff to establish a violation of the same in order to hold Defendant[s] responsible for [their] negligence." We disagree.

The Commission's order is replete with references to guidance to the NCDOT from the Federal Highway Administration ("FHWA"), as well as NCDOT standards and policies. Nevertheless, the Commission noted that negligence in this circumstance is determined just as between private parties, incorporated the standard of reasonable care articulated in *Phillips*, and evaluated the reasonableness both of NCDOT policies and its employees' actions in light of those policies. This does

not constitute a mandate that Plaintiff establish that NCDOT violated its own policies. Plaintiff's argument to the contrary is overruled.

**D. Breach of Duty**

It is undisputed that Defendants had a duty to Plaintiff to exercise ordinary care to maintain safe roadways; the parties disagree, however, as to whether Defendants breached that duty. We conclude that Defendants did not breach their duty to Plaintiff.

*1. Reasonableness of NCDOT Policies*

We begin by addressing the reasonableness of the relevant NCDOT policies delineating the circumstances under which Defendants would replace BCT guardrail end treatments.

The Commission found "that, pursuant to NCDOT policy, NCDOT was to replace obsolete guardrail end treatments in two circumstances: 1) in the case of a Resurfacing, Restoration, and Rehabilitation ('3R or R-R-R') project on the roadway; or 2) if the front guardrail post was damaged." The Commission took note of a document admitted into evidence titled "North Carolina Department of Transportation Guide for Resurfacing, Restoration and Rehabilitation (R-R-R) of Highways and Streets (other than freeways)." The Commission found that "a project had to have all three of 'Resurfacing,' 'Restoration,' and 'Rehabilitation' to be considered a 3-R project," and that "there had not been a 3-R project in the area of the accident."

Plaintiff responds to the Commission's findings concerning 3-R projects by contending that the FHWA "undeniably established that BCT guardrails should be replaced during any road project that included 3R work." She alleges that "[t]he 1994 [FHWA] Memo, the 1998 [FHWA] Memo, the 2009 [FHWA] guidance and the [FHWA] definitions of 3R work all establish that BCT guardrail hardware should be upgraded and replaced if *any one* of the 3Rs were performed." However, the transcript citation provided by Plaintiff in support of this contention does not mention the FHWA. Moreover, this characterization ignores statements published by the FHWA.

The 1994 FHWA memo stated that the "FHWA does not recommend a wholesale replacement of existing BCTs," and the 1998 FHWA memo advised that BCTs "should now be replaced . . . in conjunction with 3R work." The 2009 FHWA guidance provided that BCT guardrail end treatments "should be upgraded whenever encountered within the limits of a project on the [National Highway System]," expressly stating that "agencies are encouraged to upgrade existing highway safety hardware" in three instances: "[d]uring reconstruction projects," "[d]uring 3R projects," or in cases "[w]hen the system is damaged beyond repair." Thus, it was reasonable, in light of this guidance, for NCDOT to maintain its policy of "replac[ing] obsolete guardrail end treatments in two circumstances: 1) in the case of a Resurfacing, Restoration, and Rehabilitation ('3R or R-R-R') project on the roadway; or 2) if the front guardrail post was damaged."

Additionally, Plaintiff asserts that "[t]he 3R '[p]olicies' described by

[Defendants] do not . . . , by their specific terms, apply to [US] Highway 52," because "they apply to roadways 'other than freeways.' " Yet, there was evidence presented to the contrary. Joel Howerton, the State Plans and Standards Engineer and chairman of the NCDOT guardrail committee, testified that the "definitions would apply for someone trying to get information about what is a maintenance project[ or] what is a restoration project," and that the term "other than freeways" meant that standards could be relaxed on freeways but did not negate the applicability of the definitions to projects on those roads.

Accordingly, the Commission did not err in concluding that Defendants acted with "reasonable care" in setting policy concerning the replacement of BCT guardrail end treatments. *See Phillips*, 200 N.C. App. at 560, 684 S.E.2d at 732 (citation omitted).

*2. Failure to Replace BCT Guardrail End Treatment*

Having determined the reasonableness of the relevant NCDOT policies, we next determine whether Defendants breached their duty to Plaintiff by failing to replace the subject BCT guardrail.

Plaintiff first maintains that "Defendant[s'] guidelines required the BCT to be replaced prior to November[ ] 2014," and that Defendants negligently failed to do so. Plaintiff primarily focuses on a 2010 maintenance project, which involved resurfacing with an "ultrathin hot mix" along portions of US Highway 52, including the area of the accident. She argues that this was a 3-R project that would have triggered

replacement of the BCT guardrail end treatment in question, because "the 2010 [p]roject satisfied each of the[ ] purposes of the 3R [g]uidelines." However, Plaintiff's argument ignores other portions of the 3-R guidelines and the interpretation of NCDOT policy to which multiple witnesses testified. John Rhyne, a division maintenance engineer with NCDOT, explained the difference between the 2010 maintenance project and the "Resurfacing" of a 3-R project: "[W]ith a resurfacing project . . . you're typically talking an inch and a half or more of asphalt. . . . [T]he ultrathin mix doesn't provide any additional strength, it's just so thin. It . . . is considered a preventative maintenance activity. . . in our nomenclature." James Lacy, a NCDOT employee who had been with the Department roughly 26 years at the time of trial, also testified that the 3-R guide had "examples of items that [NCDOT] says [are not] . . . a 3-R project," including "what [was] listed on the 2010 project." The Commission was entitled to credit this testimony, and its findings that the 2010 project was a maintenance, rather than a 3-R, project are supported by competent evidence.

Thus, the Commission's challenged finding that "there had not been a 3-R project in the area of the accident" is supported by competent evidence, and Plaintiff's argument to the contrary lacks merit.

Plaintiff next argues that "[d]espite multiple opportunities, Defendant[s] took no action to replace the BCT that killed [the passengers]." Plaintiff again focuses on the 2010 project that involved "paving within three to five feet of the BCT," which

"could have been replaced in the . . . 2010 [p]roject." Yet NCDOT had developed a reasonable BCT guardrail end treatment replacement plan, pursuant to which an existing BCT guardrail end treatment would be replaced: "1) in the case of a Resurfacing, Restoration, and Rehabilitation ('3R or R-R-R') project on the roadway; or 2) if the front guardrail post was damaged." There was competent evidence to support the Commission's determination that the subject BCT guardrail end treatment fell into neither of these categories.

Finally, Plaintiff argues that "the BCT was damaged[ ] and should have been replaced" (capitalization omitted) and that Defendants' employees had "ample opportunity" to discover the damage to the BCT guardrail end treatment. However, there was also evidence presented to the contrary. The Commission found that "[t]he first notice that NCDOT received that the guardrail end treatment involved in this accident had been damaged was through the HP-320 form that NCDOT received as a result of the . . . accident" and that "there were no reports or notice that the guardrail at the accident location had been damaged prior to the 24 November 2014 accident." Based on the testimony of Howerton and Rhyne, the Commission also found that the BCT guardrail end treatment "was not damaged prior to the accident such that it should have been replaced per NCDOT policy and that it was functioning as intended."

On a related note, Plaintiff claims that the operative policy at the time of the accident, as described by Rhyne during a deposition, differed from official NCDOT

policy: "[I]f there's anything more than a[n] aesthetic blemish we typically replace it so we don't get into a gray area of was it bent or was it repairable." Nonetheless, the "typical" practice—in order to avoid "a gray area"—does not constitute an amendment to the policy. Additionally, there was evidence presented supporting the Commission's finding that the BCT guardrail end treatment in question was functioning as intended, which indicates that it would not fall into the "gray area" referenced by Rhyne. Therefore, Plaintiff's arguments lack merit.

**E. Damages to Plaintiff**

Plaintiff asserts that "Defendant[s'] breach of duty damaged Plaintiff." (Capitalization omitted).

"[I]n cases of personal injuries resulting from [a] defendant's negligence, the plaintiff is entitled to recover the present worth of all damages naturally and proximately resulting from [the] defendant's tort." *King v. Britt*, 267 N.C. 594, 597, 148 S.E.2d 594, 597 (1966). Thus, in order to recover damages, Plaintiff must first have shown a breach of duty in failing to replace the BCT guardrail end treatment in this instance, which she has failed to do. Consequently, we need not address this issue.

### III.   Conclusion

We conclude that Plaintiff has failed to show that Defendants acted negligently. Accordingly, we affirm the Commission's order.

AFFIRMED.

Judges COLLINS and CARPENTER concur.

Report per Rule 30(e).